**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 18 2012

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

HUDSON ENTERPRISES, INC. d/b/a RIVER
VALLEY MARINA, RAY HUDSON, AND
DEBRA HUDSON                                                    PLAINTIFFS

VS.                        CASE NO. 4:12-CV-00391-SWW

BEAUFORT UNDERWRITING, et al.
                                                               DEFENDANTS

---

### BRIEF IN SUPPORT OF MOTION TO REMAND

Plaintiffs, "Hudson Enterprises, Inc., d/b/a River Valley Marina, Ray Hudson, and Debra Hudson"(hereinafter referred to as "Plaintiffs"), on behalf of themselves individually and all others similarly situated, by and through their Attorney, Gene A. Ludwig, Ludwig Law Firm, PLC, for their Brief in Support of Motion to Remand, state the following:

### INTRODUCTION

The Court lacks jurisdiction to hear this case. The Defendants removed this action to this Court pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). But the Notice of Removal failed to allege each party's place of citizenship, including allegations of any corporate party's state of incorporation and principal place of business. Accordingly, the Notice of Removal does not adequately establish the existence of jurisdiction under the CAFA and remand is required. Moreover, the Local Controversy exception to CAFA mandates that the action be remanded to state court.

The class claims of this complaint are that Defendants sold insurance policies combining liability, property, casualty and other insurance coverage to residents of the state of Arkansas in violation of Defendants' statutory, contractual and common law obligations to disclose the name and address of each insurer and the proportion of the entire risk assumed by each insurer. A.C.A. § 23-65-311 is just one of the statutes addressed in the Complaint. To date, Defendants continue to refuse to disclose the names, addresses, citizenship, and proportions of risk assumed by each insurer of the individual Plaintiffs' policy and the policies of others similarly situated.

The Arkansas Legislature in enacting the above statute required these disclosures "to assist consumers by providing them the information and tools necessary to be an informed and educated consumer of insurance coverage." A.C.A. § 23-65-311 Notes, Acts 2005, No. 1697, Sec 1. The Complaint and Amended Complaint include a request that a class be certified consisting of all those insured within the State of Arkansas by certain Underwriters at Lloyd's, London or underwriters at Lloyd's, London at any time on or after April 30, 2007. Class claims allege, among other things, violation of the Arkansas Deceptive Trade Practices Act, fraud, breach of contract, breach of fiduciary duty and bad faith. Plaintiffs seek, among other things, injunctive relief, restitution, rescission, other equitable relief, compensatory and punitive damages, attorney fees, interest, costs and all other appropriate relief based upon the applicable facts and law.

The Defendants removed this case asserting federal diversity jurisdiction under CAFA. *Notice of Removal* ¶ 7 (June 27, 2012). As discussed below, the Notice of Removal does not adequately establish the existence of jurisdiction under the Class Action Fairness Act and remand is required. Moreover, the mandatory "local controversy exception" to CAFA is

satisfied. Finally, even if the Court were to determine that these two exceptions are inapplicable, the Court may, in its discretion, decline to exercise jurisdiction in this case.

## **LEGAL STANDARD**

CAFA vests federal district courts with original jurisdiction over class actions in which (1) more than $5,000,000 is at stake, (2) any plaintiff is a citizen of a state different from any defendant, and (3) the plaintiff class consists of 100 or more members. 28 U.S.C. § 1332(d)(2-5). As an initial matter, "the party seeking removal bears the burden of proving by a preponderance of the evidence that the jurisdictional requirements for removal are met." *Rolwing v. Nestle Holdings, Inc.,* 666 F.3d 1069, 1071 (8th Cir. 2012*)*. Mere arguments and speculation, however, are insufficient to establish the necessary jurisdictional facts. *Thomas v. S. Pioneer Life Ins. Co.,* 2009 U.S. Dist LEXIS 122141, 2009 WL 4894695 at *2 (E.D. Ark. Dec. 11, 2009). All doubts regarding federal jurisdiction are to be resolved in favor of remand, *In re Bus. Men's Assurance Co. Am.*, 992 F.2d 181, 183 (8th Cir. 1993), and CAFA, as a removal statute, demands a strict construction. *Miedema v. Maytag Corp.,* 450 F.3d 1322, 1328–29 (11th Cir. 2006).

To invoke the Court's CAFA jurisdiction under 28 U.S.C. § 1332(d), the party asserting jurisdiction must set forth in the Notice of Removal each party's place of citizenship, including allegations of any corporate party's state of incorporation and principal place of business. *Sanders v. Clemco Industries*, 823 F.2d 214, (8th Cir. 1987) and *Missouri ex rel. Koster v. Portfolio Recover Assocs.*, 2009 U.S. Dist. LEXIS 93100 (E.D. Mo. Oct. 6, 2009). The Eight Circuit has admonished district courts to be attentive to a satisfaction of jurisdictional requirements in all cases. *Sanders*, 823 F.2d at 216. Statutes conferring diversity jurisdiction are to be strictly construed. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992).

"[A]ll doubts about federal jurisdiction [are resolved] in favor of remand." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997). If the removing party satisfies the jurisdictional prerequisites, the burden shifts to the party seeking remand to demonstrate the applicability of one of the exceptions to CAFA. *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010). The party seeking remand must establish the elements of an exception by a preponderance of the evidence. *Froud v. Anadarko E&P Co. Ltd. P'ship.*, 2010 U.S. Dist. LEXIS 35929 (E.D. Ark. Mar. 16, 2010). Once the burden shifts, doubts regarding the applicability of an exception are resolved against the party seeking remand. *Westerfeld*, 621 F.3d at 823.

## DISCUSSION

The Plaintiffs concede that more than $5,000,000 is at stake in this controversy, that at least one plaintiff is a citizen of a different state from at least one defendant, and that the plaintiff class consists of 100 or more members. Nevertheless, the Court should abstain from exercising jurisdiction because:

1.  Defendants, in their Notice of Removal, do not state their places of citizenship and therefore do not meet their burden of proof regarding subject matter jurisdiction.

2.  Remand is required pursuant to the "Local Controversy" mandatory exception; and

3.  The discretionary exception to federal jurisdiction in CAFA applies.

Each of these exceptions are applicable in this case, and the Plaintiffs respectfully request an order remanding this case to state court.

## I. <u>DEFENDANTS, IN THEIR NOTICE OF REMOVAL, DO NOT STATE THE PLACES OF CITIZENSHIP OF ALL DEFENDANTS AND THEREFORE DO NOT MEET THEIR BURDEN OF PROOF REGARDING CAFA JURISDICTION.</u>

As noted above, to invoke the Court's CAFA jurisdiction under 28 U.S.C. § 1332(d), the party asserting jurisdiction must set forth in the Notice of Removal each party's place of citizenship, including allegations of any corporate party's state of incorporation and principal place of business. *Sanders*, 823 F.2d at 216, and *Missouri ex rel. Koster,* 2009 U.S. Dist. LEXIS 93100 at *2.

> "Defendants have removed this case pursuant to this Court's diversity jurisdiction, and more specifically, under the Class Action Fairness Act, 28 U.S.C. Sec. 1332(d). To invoke the Court's jurisdiction under Sec. 1332, the notice of removal must allege each party's place of citizenship, including allegations of any corporate party's state of incorporation and principal place of business. . . . In their notice of removal, defendants do not state their places of citizenship. . . . For these reasons, the notice of removal does not adequately establish the existence of diversity under the Class Action Fairness Act." *Id.* at *1,*2,*3.

Defendants in the case at hand have failed to indentify any insurer much less state the citizenship of each insurer. The first page of the policy contains a certificate signed by Surplus Lines Broker, Tracy L. Tratz whom Defendants acknowledge to be an Arkansas citizen. **Exhibit 3 to Amended Complaint**. This "declaration page" forming part of "certificate provisions" states that insurance is effective with "certain **UNDERWRITERS AT LLOYD'S, LONDON**". Another policy Certificate again states that, "This insurance is effective with certain Underwriters at Lloyd's, London . . . [who] bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators." **Exhibit 13 to Amended Complaint.** As reflected by the Amended Complaint, filed as a "Matter of Course" pursuant to Fed. R. Civ. P. 15(B), Plaintiffs have been unsuccessfully trying for many months

now to identify the name, address and citizenship of each insurer and the proportion of risk assumed by each as required by Arkansas law.

The policy provides only two unhelpful clues as to how to identify this vital information. **Exhibit 13 to Amended Complaint** states that, "all inquiries regarding this Certificate should be addressed to the following Correspondent: Risk Placement Services, Inc., P.O. Box 702560, Tulsa, OK 74170-2560." As reflected by the Complaint, Plaintiffs requested this information from each Defendant including Risk Placement Services, Inc. to no avail. Plaintiffs have no way of independently obtaining this information. The specific "certain underwriters" are not identifiable at the Arkansas Insurance Commission or at the National Association of Insurance Commissioners (NAIC).

The second unhelpful clue as how to identify the actual insurers comes from the policy Syndicate List, which simply "[references] the agreement number and syndicate that this policy is written under through Underwriters at Lloyd's, London." **Exhibit 17 to Amended Complaint.** The syndicates listed are identified only by Pseudonyms and syndicate numbers, which do not match up to how the Defendants identified each syndicate in their Answer to the Complaint. No citizenship information has been provided for any syndicate or underwriting members thereof. The syndicate numbers themselves match up to those listed by the NAIC. However, the NAIC refuses to release any citizenship or other specific information it may possess regarding each syndicate much less the underwriting members thereof. **Exhibit 18 to Amended Complaint.**

The Lloyd's of London web site contains a glossary defining its terms, which confirms that neither Lloyds, London nor the syndicates identified on the "Syndicate List" are insurers. Lloyd's definitions include the following:

> **"Lloyd's"** is defined as: "Depending on the context this term may refer to - (a) the society of individual and corporate underwriting members that insure and reinsure risks

as members of one or more syndicates. Lloyd's is not an insurance company; (b) the underwriting room in the Lloyd's Building in which managing agents underwrite insurance and reinsurance on behalf of their syndicate members.  In this sense Lloyd's should be understood as a market place; or (c) the Corporation of Lloyd's which regulates and provides support services to the Lloyd's market." **Exhibit 19 to Amended Complaint.**

**"Underwriter"** is defined as: "an individual member or company that insures or reinsures a risk." **Exhibit 20 to Amended Complaint.**

**"Syndicate"** are defined as: "a member or group of members underwriting insurance business at Lloyd's through the agency of a managing agent or a substitute agent to which a syndicate number is assigned by the Council." **Exhibit 21 to Amended Complaint.**

**"Member"** is defined as: "a person (either individual or corporate) admitted to membership of the Society." **Exhibit 22 to Amended Complaint.**

**"Member's agent"** is defined as: "an underwriting agent which has permission from Lloyd's to be appointed by a member to provide services and perform duties of the same kind and nature as those set out in the standard members' agent's agreement. These services and duties include advising the member on which syndicates he should participate, the level of participation on such syndicates and liaising with the member's managing agents." **Exhibit 23 to Amended Complaint.**

All of these definitions are consistent with previous rulings by Federal Courts who are repeatedly forced to grapple with jurisdictional issues associated with "Lloyds" efforts to shroud actual insurers from their insured.

Lloyds of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market. John M. Sylvester & Roberta D. Anderson, Is It Still Possible To Litigate Against Lloyd's in Federal Court?, 34 Tort & Ins. L.J. 1065, 1068 (1999). The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Certain Interested Underwriters at Lloyd's, London v. Layne, 26 F.3d 39, 41 (6th Cir. 1994) (citing Clifford Chance, Doing Business in the United Kingdom, § § 46.02, 46-6, 46-8 (Barbara Ford, A.D.M. Forte, & Herbert Wallace Eds. 1990); Eileen M. Dacey, The Structures of the Lloyd's Market, in Lloyd's Market, the ILU, and the London Insurance Market 1990, at 33, 49-0 (PLI Commercial Law & Practice Course Handbook Series No. 555, 1990)). Thus, a policyholder insures at Lloyd's but not with Lloyd's. Lee R. Russ & Thomas F. Segalla,

Couch on Insurance § 39:47 (3d ed. 1995) (citing Bickelhaupt, D., General Insurance 775 (1983, 11th ed.)). *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003).

The Members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure ricks. Sylvester & Anderson, Supra, at 1068. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. Squibb, 160 F.3d at (29. Lloyd's requires Names to pay a membership fee, keep certain deposits at Lloyd's, and possess a certain degree of financial wealth. Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Surety Co., 177 F.3d 210, 221 (3d Cir. 1999). Each Names is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Squibb, 160 F.3d at 929. Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint. *Id.* at 358.

Most Names or investors do not actively participate in the insurance market on a day to day basis. Layne, 26 F.3d at 42. Rather, the business of insuring risk at Lloyd's is carried on by groups of Names called "Syndicates." Id. at 41-42. In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" which will in turn subscribe to policies on behalf of all Names in the Syndicate. Squibb, 160 F.3d at 929; Chemical Leaman, 177 F.3d at 221. A typical Lloyd's policy has multiple Syndicates which collectively are responsible for 100 percent of the coverage provided by a policy. Sylvester & Anderson, Supra, at 1068. The Syndicates themselves have been said to have no independent legal identity. Id. Thus, a Syndicate is a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy. A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, all liability is born by the individual Names who belong to the various Syndicates that have subscribe to a policy. *Id.* at 358.

\* \* \*

In sum, while an insured receives a Lloyd's "policy" of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk. The Names are jointly and severally obligated to the insured for the percentage of the risk each has agreed to assume. *Id.* at 359.

Thus the policies, which are the subject of this lawsuit, taken as a whole, are really a series of independent bilateral contracts from insurer to insured. Each underwriter is bound in contract to the insured and not to each other and a Syndicate bears no liability (other than in an agency capacity). *E.R. Squibb & Sons, Inc. v. Accident & Casualty Insurance Co.,* 160 F.3d 925,

929 (2d Cir. 1998).

The citizenship of the underwriter sued on the policy is the only citizenship relevant for diversity purposes. *Chemical Leaman Tank Lines v. Aetna Cas. & Sur. Co.*, 177 F. 3d 210, 223 (3d Cir. 1999).

> "As the district court in Squibb observed, "[i]t would be a strange law indeed that would hold that an individual, who had so clearly bound himself individually by contract, could not be sued individually to enforce that contractual obligation." *Squibb*, 1999 U.S. Dist. LEXIS 8333, 1999 WL 350857 at *5. Indeed, the very essence of a Lloyds policy is that it is a collection of individual contracts running between the insured and each Name. *Corfield*, 355 F.3d 853, at 864.
>
> The severability of each Name's Liability to the insured lends further support to the conclusion that a Name can be sued individually. As discussed above, a Lloyd's policy is actually a collection of many bilateral contracts running between the insured and each Name. The Names contract directly with the insured and each Name contracts independently of any other Name. *Id.*
>
> \* \* \*
>
> Simple logic allows for no other conclusion but that an insurer can sue a Name individually." *Id.*

Based upon very limited information, Plaintiffs have done their best to join each certain underwriter in the lawsuit individually and have also named 30,000 John Does for this purpose. *Amended Complaint* ¶ 54. Thus, (1) each undisclosed name, member or underwriter is a proper defendant, (2) the name, address and citizenship of each should have been disclosed by Defendants, and (3) the case should be remanded because the Notice of Removal must have contained such information but did not.

Based upon information learned by Plaintiffs since the filing of the original Complaint, the Amended Complaint added approximately 34 newly discovered defendants, 25 of whom are Arkansas citizens.

The allegations of the Amended Complaint should be considered for purposes of

adjudicating the Motion to Remand. In *Irish v. Burlington Northern Santa Fe Railway Co.*, 632 F.Supp.2d 871, 872 (W.D. Wis. 2009), the district court *rejected* the argument that for the purpose of determining whether subject matter jurisdiction exists in a case removed from state court under CAFA, the court is bound by the allegations of the original complaint and may not consider any later amendments. *Id.* When an amendment is not filed as a Matter of Course, A district court should freely give leave to a party to amend its pleadings, "... when justice so requires." Fed. R. Civ. P. 15(a)(2).

Because Defendants have not disclosed the citizenship of all insurers, the Notice of Remand does not adequately establish jurisdiction under CAFA and the case should be remanded.

## II. REMAND IS REQUIRED PURSUANT TO THE "LOCAL CONTROVERSY" MANDATORY EXCEPTION.

The CAFA expansion of federal jurisdiction over class actions was motivated in part by Congress' concern that state courts were "keeping cases of national importance out of Federal court," and "making judgments that impose[d] [that State's] view of the law on other States." Pub. L. No. 109-2, § 2(a)(4), 119 Stat. 4, 5 (2005). Specifically, Congress determined that it was "nonsensical" for a federal court to be able to assert jurisdiction over simple state law claims such as auto accidents and trespassing, while "large-scale, interstate class actions involving thousands of plaintiffs from multiple states, defendants from many states, the laws of several states, and hundreds of millions of dollars" were kept out of Federal Court. S. REP. No. 109-14, at 11 (2005). Furthermore, Congress sought to remedy the perceived problem of state courts applying their own state-specific laws to controversies involving plaintiffs and defendants from the 49 other states with rulings that contradicted the laws of those other states. *Id.* at 24. With these problems in mind, Congress enacted CAFA for the purpose of "providing for Federal court

consideration of interstate cases of national importance under diversity jurisdiction." 119 Stat. at 5.

CAFA "includes a narrowly-tailored expansion of federal diversity jurisdiction to ensure that class actions that are truly interstate in character can be heard in federal court," but Congress intended for "class actions involving certain local controversies" to remain in state court. S. REP. No. 109-14 at 27. Congress carved out two important and mandatory exceptions to the otherwise-expanded reach of a district court's jurisdiction over class actions: the "local controversy" and "home state" exemptions. 28 U.S.C. § 1332(d)(4)(A)-(B). The local controversy exception will be discussed in the paragraphs that follow. This brief will then address the Court's discretion to decline jurisdiction pursuant to CAFA when certain conditions, applicable in this case, have been satisfied.

Federal district courts "shall decline to exercise jurisdiction" over class action cases meeting the following four criteria:

(1)     Greater than two-thirds of proposed class members are citizens of the state in which the action was originally filed;

(2)     The plaintiff class is seeking significant relief from at least one defendant who is a citizen of the same state in which the action was originally filed and whose conduct forms a significant basis for the claims asserted;

(3)     Principal injuries resulting from the conduct of each defendant were incurred in the state in which the suit was originally filed; and

(4)     No other class actions have been filed asserting the same or similar allegations against any of the defendants on behalf of the same or other persons during the three-year period preceding the filing of the current class action.

*See* 28 U.S.C. § 1332(d)(4)(A).

These provisions make up the local controversy exception to CAFA under which "a district court must decline to exercise jurisdiction." *Westerfeld*, 621 F.3d at 822. As the Eighth

Circuit has noted, the local controversy exception "operates as an abstention doctrine," whereby

the statute, while recognizing that the district court has subject matter jurisdiction over the case,

nevertheless "direct[s] the court to 'decline to exercise' such jurisdiction when certain

requirements are met." *Graphic Commun. Local 1B Health & Welfare Fund "A" v. CVS

Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011).

As Congress explained, "[t]his provision is intended to respond to concerns that class

actions with a truly local focus should not be moved to federal court under this legislation

because state courts have a strong interest in adjudicating such disputes." S. REP. NO. 109-14 at

39. While counseling that the provision was not intended to become a "jurisdictional loophole,"

Congress urged federal courts to "bear in mind that the purpose of each of these criteria is to

identify a truly local controversy – a controversy that uniquely affects a particular locality to the

exclusion of all others." *Id.*

The Senate Report provides a clear example of how the local controversy exception is

intended to work:

> A class action is brought in Florida state court against a Florida funeral
> home regarding alleged wrongdoing in burial practices. Nearly all the plaintiffs
> live in Florida (about 90 percent). The suit is brought against the cemetery, a
> Florida corporation, and an out-of-state parent company that was involved in
> supervising the cemetery. No other class action suits have been filed against the
> cemetery. This is precisely the type of case for which the Local Controversy
> Exception was developed. Although there is an out-of-state defendant (the parent
> company), the controversy is at its core a local one, and the Florida state court
> where it was brought has a strong interest in resolving the dispute. Thus, this case
> would remain in state court.

*Id.* at 41.

Working from this articulation of Congressional intent, District Judge Hendren found that

the local controversy exception was applicable in a case involving facts highly similar to the one

at bar in *Stevens v. Diversicare Leasing Corp.*, 2009 U.S. Dist. LEXIS 41578 (W.D. Ark. May 4,

2009) *permission to appeal denied* No. 09-8008 (8th Cir. June 5, 2009). There, the plaintiffs

sought certification of a class comprised of residents and estates of residents who had previously

received care at a nursing facility. *Id.* at *1. The *Stevens* plaintiffs asserted claims for breach of

statutory and contractual obligations resulting from the defendants' failure to properly staff the

nursing facility. *Id.* As here, the defendants removed the case to federal court pursuant to CAFA.

*Id.*

Quoting the example in the Senate Report, Judge Hendren determined that "[c]learly the

facts of the case at bar align with this illustration." *Id.* at *5. He further pointed out that "[t]he

controversy centered on a local nursing home and implicated questions of Arkansas law,"

leading the district court to the opinion that Arkansas state courts had "a strong interest in

resolving this dispute." *Id.* Ultimately, the case was remanded back to state court pursuant to the

local controversy exception. *Id.*

The facts in the present case track those of *Stevens Id.* at *1. The plaintiffs seek

certification of a class comprised of Arkansas residents to whom Defendants sold insurance

policies within the State of Arkansas in violation of Arkansas statutes including the one cited

above and the Arkansas Deceptive Trade Practices Act. The *Stevens* plaintiffs asserted claims for

breach of statutory and contractual obligations as do Plaintiffs in the case at hand. Arkansas

again has a strong interest in resolving a disputed rooted in Arkansas statutes. As here, the

Defendants removed the case to federal court pursuant to CAFA. *Id.* The Local Controversy

exception applies, and the motion should therefore be remanded.

A. <u>Greater Than Two-Thirds of the Proposed Class Are Citizens of Arkansas.</u>

There does not appear to be a dispute about satisfying this requirement. Defendants'

Notice of Removal states that: "All members of the putative class are citizens of a state different

from that of all of the Defendants, except one, Tracy Tratz . . . " *Notice of Removal* ¶ 14 (June 27, 2012). Tracy Tratz is a citizen of Arkansas. The Complaint and Amended Complaint state that the class to be certified consists of all those insured within the State of Arkansas by certain Underwriters at Lloyd's, London or underwriters at Lloyd's, London at any time on or after April 30, 2007. *Amended Complaint* ¶ 2. Plaintiffs do not seek to certify a class representing anyone other than Arkansas residents. "For purposes of diversity jurisdiction, the terms 'domicile' and 'citizenship' are synonymous." *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). It is presumed "that the place where a person actually lives is his domicile." *Maple Island Farm v. Bitterling*, 196 F.2d 55, 58 (8th Cir. 1952) and *Bruton v. Shank*, 349 F.2d 630, 632 (8th Cir. 1965) (stating "[i]ndeed it is said that the mere fact of residence in a place is prima facie evidence of domicile there"). As it was in *Stevens*, it is undisputed that more than two-thirds of the members of the proposed class are Arkansas residents. *Stevens*, 2009 U.S. Dist. LEXIS 41578 at *3. Accordingly, this prong of the local controversy exception is satisfied.

B. At Least One Defendant from Whom Significant Relief is Sought and Whose Conduct Forms a Significant Basis for the Claims Asserted Is a Citizen of Arkansas.

The local controversy exception requires only that the plaintiff class seek significant relief from *one* defendant who is a citizen of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(A).

In order to qualify as "significant" for purposes of the local controversy exception, a defendant must be "one from whom significant relief is sought by members of the plaintiff class," and one "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." *Westerfeld*, 621 F.3d at 823. The Eighth Circuit has decided that a particular defendant's conduct must be compared to the conduct of all involved defendants in order to make this determination; the "conduct must be an important ground for the asserted

claims" compared to the conduct of all defendants. *Id.* at 825. (citing *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 157 (3d Cir. 2009)).

The Amended Complaint lists 25 newly discovered Defendants (*Amended Complaint* ¶ 39) who are:

1. Arkansas citizens;

2. Responsible as Surplus Lines Brokers and Surplus Lines Agencies for the issuance of over 1,000 policies which are the subject of this case; and

3. Responsible for collection of related premiums totaling over $15,000,000 for roughly one-year of the five-years involved in this case. So far, Plaintiffs do not have information relating to the other four-years but extrapolate that these Defendants are responsible for the collection of premiums totaling approximately $75,000,000 over five-years. *Amended Complaint* ¶ 39(3).

The Amended Complaint also alleges that each of these 25 defendants were responsible as surplus lines brokers and agencies for the actual issuance of all of these policies. *Amended Complaint* ¶ 39 & 40.

The Amended Complaint also alleges that every Defendant underwriter, insurer used as his or her/its agent, at least one surplus lines broker and/or agent producer who was an Arkansas citizen responsible for all policy sales and collection of all premiums which are the subject of this case and. *Amended Complaint* ¶ 40.

With respect to the original Complaint, Defendants disingenuously state that Plaintiffs' Complaint makes no allegations against Defendant Tracy L. Tratz whom Defendants concede is an Arkansas citizen. On the contrary, allegations of the Complaint include the following:

1. "Defendants issued to Plaintiffs a written insurance contract . . . attached as **Exhibit A** and incorporated herein by reference." *Complaint* ¶ 29. Tracy Tratz's name conspicuously appears on the first page of the policy. As reflected by this paperwork, Tracy Tratz was the Surplus Lines Broker responsible for issuing the policy of the individual plaintiff. Obviously, the policy would not have been issued in violation of Arkansas law, but for the conduct of Tracy Tratz.

2. Defendants sold insurance policies to residents of Arkansas describing the insurer as certain Underwriters at Lloyds, London. No actual insurers were disclosed even though such was required by each insurance contract and state law. *Complaint* ¶ 58. The initial statutory disclosure requirements of A.C.A. § 23-65-311 are placed squarely upon the shoulders of. Tracy. Tratz as the Surplus Lines Broker. Tratz is the broker who shall promptly issue and deliver evidence of insurance, A.C.A. § 23-65-311(a)(1), and who must execute under appropriate circumstances a certificate showing the name and address of the insurer, A.C.A. § 23-65-311(a)(2)(iv), and the proportion of the entire risk assumed by each insurer, A.C.A. § 23-65-311(a)(2)(B). To use a classic tort case as an analogy, Ms. Tratz is the driver of each underwriter's eighteen-wheeler charged with following the statutory rules of the road. Tratz is individually liable for failures to do so despite the application of vicarious liability or other liability to the underwriter as owner and operator of the truck. Notably, the Defendants do not suggest that Tracy Tratz was joined fraudulently.

3. Tracy Tratz is also included in most if not all of the other allegations of the Complaint by collective reference to Defendants.

16

The Amended Complaint also attaches a number of affidavits signed by Tracy Tratz and alleges that Tratz was responsible for the issuance of numerous similar "Lloyds" transactions which are the subject of the class claims and that Tratz was responsible for sales and collection of related premiums totaling more than $3,037,508.00. *Amended Complaint* ¶ 36.

*Stevens*, again provides guidance. There, the sole local defendant was Steven Levato, the administrator at the facility. The licensee and owner of the facility was an out-of-state corporation and therefore not a citizen for CAFA purposes. The Court ruled that Levato's "conduct forms a significant basis for the claims asserted by the proposed plaintiff class" and that he alone was sufficient to defeat CAFA jurisdiction:

> Levato was charged with ensuring that the Center maintained adequate staffing and resident care. It is significant, then, that the harms alleged in the complaint stem, in large part, from the Center's inadequate staffing. Thus, it appears that Levato's conduct and performance as administrator forms a significant basis for the claims asserted.

*Stevens*, at *4.

It was clear to the Court, therefore, that Levato was "a primary focus of the Plaintiffs' claims, not merely a peripheral defendant." *Id.*

The reasoning in *Stevens* carries even greater weight here since Tracy Tratz's and the other 25 brokers named in the Amended Complaint were personally statutorily charged with responsibility for the written disclosures and each played key roles in issuance of numerous policies.

With respect to the original Complaint, only Tracy Tratz, Risk Placement Services Inc. and its employees had responsibilities as Surplus Lines Brokers. All of the other named Defendants acted as insurers or claims agents or managing agents for insurers. And no portion of Plaintiffs' complaint limits the scope of Ms. Tratz's activities to those associated with Risk

17

Placement Services Inc. In fact, **Exhibit 2 to the Amended Complaint** confirms that Tracy Tratz is responsible for the issuance of other policies applicable to this case which had nothing to do with Risk Placement Services Inc. **Exhibit 1 to the Amended Complaint** demonstrates the sheer volume of transactions handled by Tracy Tratz and the number of times Tratz falsely signed Affidavits.

What is more, the allegations of the Amended Complaint confirm that Ms. Tratz was a control persons as defined in the Arkansas Deceptive Trade Practices Act and, therefore, liable for Plaintiffs' claims for violations of that act. A.C.A. § 4-88-113(d)(1). *Amended Complaint* ¶ ¶36, 113. Accordingly, Tratz's conduct forms a significant basis for the claims asserted, and the Plaintiffs seek significant relief from Tratz for their damages. The same is true for the other 25 defendants who are citizens of Arkansas.

Defendants will no doubt attempt to submit extrinsic evidence in an impermissible attempt to cause delay and create a mini trial on the merits of this case. The Ninth Circuit Court of Appeals in, *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011), noted that "Congress was particularly concerned that subject matter jurisdiction determinations be made quickly under CAFA." *Id.* at 1016. The Court instructed district courts "to look to the complaint rather than to extrinsic evidence" when deciding whether a defendant is one from whom significant relief is sought and whose conduct forms a significant basis of the claims asserted. *Id.* The alternative of permitting Defendants to pick and choose disclosure of facts from their secret database before completion of a long discovery process would prejudice Plaintiffs.

Moreover, the Court in *Coleman* ultimately concluded that "[s]uch a determination necessarily implicates the merits of the case. We see nothing in CAFA that indicates a

congressional intention to turn a jurisdictional determination concerning the local defendant's 'alleged conduct' into a mini-trial on the merits of the plaintiff's claims." *Id.* at 1017.

The conduct of the individual Defendant, Tracy L. Tratz, as Surplus Lines Broker who signed the Plaintiffs' policy, handled many other similar sales in question, and signed a large number of Affidavits relating to many other similar transactions is an important ground for the claims asserted in this case, and the Plaintiffs seek significant relief from injuries and damages resulting from that conduct. The same is true for the other 25 Defendants who are citizens of Arkansas and who shared responsibility as Surplus Lines Brokers for a large number of transactions exceeding $15,000,000.00. Therefore, the significance requirement of the local controversy exception to CAFA is satisfied.

It is also important to note that Defendants' critical failure to allege the citizenship of all Defendants has prevented a complete evaluation as to how many other Defendants are citizens of Arkansas and whose conduct forms a significant basis for claims asserted. As noted by *Corfield*, typically hundreds of names or underwriters will subscribe to a single policy and the liability of each underwriter is several, not joint. *Corfield*, 355 F.3d at 358. It is hard to imagine that no insurer is a citizen of Arkansas when the policy "Syndicate List" uses the pseudonym ARK and a Syndicate identification number of ARK 4020. **Exhibit 17 to Amended Complaint.** Surely insurers include Arkansas citizens whose conduct also forms a significant basis for claims asserted.

But even if no insurer is a citizen of Arkansas, the Amended Complaint alleges that at least one surplus lines broker and/or agent/producer who was an Arkansas Citizen was responsible for issuance and sales of all policies sold in Arkansas to Citizens of Arkansas on behalf of all insurers. *Amended Complaint* ¶ 40.

C. The Principal Damages Resulting from the Conduct of the Defendants Were Incurred in Arkansas.

Again, Plaintiffs do not anticipate a dispute as to whether this requirement is met. It is undisputed that alleged damages suffered by Arkansans in Arkansas were a result of sales of insurance policies and coverage within the State of Arkansas. The third element of the local controversy exception is easily satisfied.

D. No Other Class Actions Have Been Filed Asserting the Same or Similar Allegations Against Any of the Defendants On Behalf of the Proposed Class Members During the Preceding Three-Years

There have been no other class actions asserting the same or similar allegations against these Defendants on behalf of members of the proposed class during the preceding three-years. Accordingly, this prong is also satisfied.

As set forth above, the local controversy exception is applicable to this case and mandates abstention.

The facts here closely track the example in the S. REP. NO. 109-14 at 39.  The Plaintiffs here are citizens of the State of Arkansas; they seek recovery for damages against a citizen of the State of Arkansas for injuries sustained in the State of Arkansas, the case turns on application of Arkansas law, and no other class action has been filed against the Defendants in the preceding three years.  "This is precisely the type of case for which the Local Controversy Exception was developed," a reality that was recognized by the Court in *Stevens*, 2009 U.S. Dist. LEXIS 41578 at *13. "The Court, therefore, believes that this is the very sort of local matter anticipated by the CAFA's local controversy exception . . ." *Id*, at *14. Accordingly, Plaintiffs respectfully request that this Court remand this case back to the state courts of Arkansas for resolution of the underlying claims particularly since "[A]ll doubts about federal jurisdiction [are resolved] in favor of remand." *Transit Cas. Co.*, 119 F.3d at 625.

**III. THIS COURT SHOULD DECLINE TO EXERCIS JURISDICTION BECAUSE THE STATE OF ARKANSAS HAS A SUBSTANTIAL INTEREST IN RESOLVING THIS DISPUTE.**

Even if this Court were to determine that the local controversy exception to Federal jurisdiction under CAFA were inapplicable, this Court could still decline to exercise jurisdiction over this case under the permissive test established by 28 U.S.C. § 1332(d)(3). Under that provision, "[a] district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction" when the primary defendants and more than one-third but less than two-thirds of the members of the proposed plaintiff class are citizens of the state where the action was originally filed. 28 U.S.C. § 1332(d)(3).

Under this provision, the Court is directed to consider six factors to guide its decision regarding the exercise of jurisdiction. Those factors will be considered in the following paragraphs.

A.   Whether the claims asserted involve matters of national or interstate interest.

The first factor that courts are urged to consider is whether the case involves matters of national or interstate interest. 28 U.S.C. § 1332(d)(3)(A). "If a case presents issues of national or interstate significance, that argues in favor of the matter being handled in federal court." S. REP. NO. 109-14, at 36. The example cited in the Senate Report is of a nationally distributed pharmaceutical product with injurious side effects. *Id.* Due to the potential "nationwide ramifications of the dispute and the probable interference with federal drug laws," federal jurisdiction should presumably be asserted in such a case. *Id.*

The case before this Court is markedly different. Far from presenting issues of national or interstate interest, this case presents distinctly local issues, namely policies issued in Arkansas by Arkansas agents or brokers pursuant to Arkansas law. Far from being nationwide in scope, the

proposed class is made up exclusively of Arkansas residents asserting common law claims for breach of contract and violations of specific Arkansas statutes. *Amended Complaint* ¶¶¶¶ 89, 92, 94, 121. This case presents a distinctly local matter with local issues; therefore, this factor weighs in favor of remand.

      B.   <u>Whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States.</u>

The second factor courts are urged to consider in making a determination under the discretionary remand provision is which state's law will govern the case. 28 U.S.C. § 1332(d)(3)(B). "[I]f the court concludes that the laws of the state in which the action was filed will apply to the entire controversy, that factor will favor allowing the state court to handle the matter. S. REP. NO. 109-14, at 37. As mentioned earlier in this brief, Congress sought to remedy a perceived problem of individual states applying their own laws to a nationwide controversy to the exclusion of other states with an interest in having their law applied. *Id.*

As discussed under the previous factor, this case presents claims wholly governed by the laws of the State of Arkansas. In addition, the overwhelming majority of proposed class members are Arkansas citizens. As stated by the United States Court of Appeals for the First Circuit:

> Congress in enacting CAFA was concerned that state courts were 'making judgments that impose their view of the law on other States and bind the rights of the residents of those States. But again, that potential problem is not implicated where the class members are largely citizens of the forum state.

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 81 (1st Cir. 2009) (internal citations omitted). Accordingly, this factor also weighs in favor of remand.

      C.   <u>Whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction.</u>

This factor is codified at 28 U.S.C. § 1332(d)(3)(C). The relevant question under this factor is not whether the plaintiffs are seeking to avoid federal jurisdiction in general; rather, the question to be answered is whether the proposed class is a "natural" one. S. REP. NO. 109-14, at 37. With this factor, Congress is urging courts to consider whether the class "appears to be gerrymandered" with selective inclusion or exclusion of class members so as to avoid federal jurisdiction. *Id.* Class inclusion that follows a "natural" pattern, however, favors remand to state courts. *Id.*

In this particular case, Plaintiffs' proposed class consists of "all those insured within the State of Arkansas by certain Underwriters at Lloyd's, London or underwriters at Lloyd's, London at any time on or after April 30, 2007." *Amended Complaint* ¶ 2. This proposed class does not selectively exclude any potential plaintiffs in order to avoid federal jurisdiction, and this factor, therefore, favors remand.

> D. Whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants.

Courts are also encouraged to consider the plaintiffs' choice of forum in making a determination under the discretionary remand provisions of CAFA. 28 U.S.C. § 1332(d)(3)(D). This factor was included in order to help stem the practice of bringing suits in "out-of-the-way 'magnet' state courts that have no real relationship to the controversy at hand." S. REP. NO. 109-14, at 37. The key inquiry under this factor is whether the selected forum has a "distinct nexus" to the case. *Id.*

This suit was filed originally in the Circuit Court of Pulaski County. Plaintiffs are residents of Pulaski County. The damages sustained by Plaintiffs and many class members occurred in Pulaski County. The results of the actions and inactions of Defendants were manifested in Pulaski County. Unlike the "out-of-the-way magnet state courts" that concerned

Congress, the Circuit Court of Pulaski County has a distinct nexus to the issues presented by this case, and this factor leans toward remand back to that court.

     E.    <u>Whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of states.</u>

As with many of the other provisions of CAFA, courts are urged to consider the citizenship of the members of the proposed plaintiff class in making a determination under the discretionary remand provision. 28 U.S.C. § 1332(d)(3)(E). This factor favors the exercise of federal jurisdiction when there are multiple states that would have a strong interest in the case. S. REP. NO. 109-14, at 38. Reincorporating and reiterating the reasons mentioned throughout this brief, it is clear that the State of Arkansas' interest in this case predominates. All or virtually all of the class members are citizens of Arkansas, the harm suffered by the Plaintiffs and class members occurred in Arkansas, and the laws of the State of Arkansas are the only ones to be applied. This factor also favors remand.

     F.    <u>Whether, during the three-year period preceding the filing of the class action, one or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.</u>

The last factor to be considered is whether other similar class actions have been brought in the preceding three years. 28 U.S.C. § 1332(d)(3)(F). The interest here is in efficiency of coordinating and consolidating overlapping class actions pursuant to the multidistrict litigation process available in federal courts. S. REP. NO. 109-14, at 38. There have been no other class actions asserting the same or similar allegations against these Defendants on behalf of members of the proposed class during the preceding three years. Accordingly, this factor favors remand.

All of the factors designed to guide the Court's determination of whether to decline to exercise jurisdiction under CAFA favor remand in this case. As the Senate Report summarized,

"the Committee intends that these factors would permit a federal court, in its discretion, to allow a class action asserting primarily local claims under local law for what is primarily a local group of claimants to proceed in state court . . . " S. REP. NO. 109-14, at 39. The case before this Court shares all of the characteristics just mentioned. In this case, a class of primarily Arkansas claimants is asserting violations of Arkansas law for actions and inactions that occurred at facilities located within Arkansas. This is precisely the type of case that members of Congress intended to be covered by the discretionary remand provisions of CAFA. Accordingly, Plaintiffs respectfully request that this Court remand this case back to the state courts of Arkansas particularly since [A]ll doubts about federal jurisdiction [are resolved] in favor of remand." *Transit Cas. Co.,* 119 F.3d at 625.

## CONCLUSION

None of the concerns underlying the expansion of federal jurisdiction over class actions is presented by the facts of this case. This case does not present a matter of national or interstate importance, and there is no risk that the state courts of Arkansas will flout the laws of all other interested states by making a judgment that imposes its view of the law on those other states.

This case presents a proposed class of Arkansas citizens bringing claims against those who sold insurance policies in Arkansas pursuant to the laws and regulations of the State of Arkansas. This case asserts damages related to and seeks relief from that which occurred in Arkansas as a result of Defendants' violations of Arkansas law. Congress intended for these types of controversies to remain in state court, and it was careful to include appropriate mechanisms whereby these cases could be remanded.

For the reasons detailed in this brief, this Court must decline to exercise jurisdiction over this case pursuant to the local controversy exception located at 28 U.S.C. § 1332(d)(4)(A), (B).

In the alternative, this Court is also vested with the discretion to decline to exercise jurisdiction over this case pursuant to the discretionary remand factors located at 28 U.S.C. § 1332(d)(3)(A)-(F).

Moreover, because Defendants have not disclosed the citizenship of all insurers, the Notice of Remand does not adequately establish jurisdiction under CAFA and the case should be remanded.

**WHEREFORE**, Plaintiffs, "Hudson Enterprises, Inc., d/b/a River Valley Marina, Ray Hudson, and Debra Hudson" (hereinafter referred to as "Plaintiffs"), on behalf of themselves individually and all others similarly situated, by and through their Attorney, Gene A. Ludwig, Ludwig Law Firm, PLC, respectfully request that this Court grant Plaintiffs' Motion to Remand this case back to the Circuit Court of Pulaski County, Arkansas and all other proper relief.

Respectfully Submitted,

By: _____
Gene A. Ludwig, Ark. Bar No. 82096
Ludwig Law Firm PLC
1 Three Rivers Drive
Little Rock, AR 72223
(501) 868-7500
gene@ludwiglawfirm.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Gene A. Ludwig, hereby certify that a copy of the foregoing Brief in Support of Motion to Remand was served upon the following counsel of record via facsimile and U.S. Mail on the 18th day of July, 2012.

David D. Wilson
Friday, Eldredge & Clark, LLP – Little Rock
Regions Center
400 West Capitol Ave., Suite 2000
Little Rock, AR 72201-3522
501-370-1564
Email: wilson@fridayfirm.com

Paul L. Fields, Jr.
Fields Howell Athans & McLaughlin, LLP
191 Peachtree Street NE
Suite 4600
Atlanta, GA 30303
404-214-1252

Gregory L. Mast
Fields Howell Athans & McLaughlin, LLP
191 Peachtree Street NE
Suite 4600
Atlanta, GA 30303
404-214-1252

James Price Collins
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP – Dallas
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, TX 75202
214-698-8030
Email: price.collins@wilsonelser.com

_Gene A. Ludwig_